UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DISTRICT AT DAYTON

| | |
|---|---|
| **KELLY LEWBER**, <br> 830 Dorothy Lane <br> Greenville, OH 45331 <br><br> Plaintiff, <br><br> vs. <br><br> **BANK OF AMERICA, N.A.**, <br> c/o CT Corporation System <br> 4400 Easton Commons Way, Suite 125 <br> Columbus, Ohio 43219 <br><br> Defendant. | CASE NO.: <br><br> JUDGE: <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff Kelly Lewber ("Lewber"), through counsel, for her Complaint against Defendant Bank of America, N.A. ("BANA"), states:

## WHY LEWBER IS FILING THIS COMPLAINT

1. This case concerns material errors committed by BANA when it, in processing a loss mitigation application from Lewber, improperly denied her a trial modification. Although Lewber timely submitted multiple copies the trial modification documents, BANA falsely claimed that it did not receive all of the required signatures by the deadline.

## PARTIES, JURISDICTION, AND VENUE

2. Lewber was the owner of residential real property, located at and commonly known as 5989 Meadow Creek Drive, Unit 8, Milford, Ohio 45150 (the "Property") which she occupied as her primary, principal residence until the Property was sold on April 10, 2018. Lewber now resides in the City of Greenville, County of Darke, State of Ohio.

3. From approximately October 31, 1996 to April 10, 2018, BANA was the servicer of a note executed by Lewber (the "Note") and of a mortgage on the Property that secures said note (the "Mortgage") (collectively, the "Loan"). The Loan is attached as **Exhibit 1**.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

5. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* of Regulation X.

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

7. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

8. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

9. The Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. § 1024.2(b). *See* 12 C.F.R. § 1024.2(b).

10. BANA is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4). *See* 12 C.F.R. § 1024.30(b)(1).

11. BANA is not a "qualified lender", as defined in 12 C.F.R. § 617.700. *See* 12 C.F.R. § 1024.30(b)(3).

12. Lewber asserts a claim for relief against BANA for breaches of the specific rules under Regulation X as set forth, *infra*.

13. Lewber has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

14. Lewber additionally asserts a common law claim for breach of contract.

## FACTUAL BACKGROUND

**(The First Application and Trial Payment Plan)**

15. This matter concerns material errors that BANA, in processing a loss mitigation application from Lewber while at the same time pursuing a foreclosure action against her between December 13, 2016 and April 10, 2018.  As detailed below BANA's actions related to loss mitigation continued following the foreclosure sale of the property at times when BANA should have been acting solely as a debt collector.

16. On May 28, 2015, the Village of Woodcreek Condominium Owners Association (the "HOA") filed a foreclosure action in the Court of Common Pleas for Clermont County, Ohio, Case No. 2015 CVE 00678 (the "Foreclosure"). A copy of the Foreclosure Docket Sheet is attached as ***Exhibit 2***.

17. On September 7, 2016, the HOA filed an Order of Sale. *See Exhibit 2*.

18. On October 31, 2016, the HOA moved to withdraw the Order of Sale. *See Exhibit 2*. The withdrawal was due to the fact that Lewber remitted in excess of $15,000.00 to the HOA.

19. On December 13, 2016, BANA sent correspondence to Lewber informing her that they were in possession of a complete loss mitigation application. A copy of the Complete Application Notice is attached as ***Exhibit 3***.

20. On December 20, 2016, BANA informed Lewber that she had been approved for a Trial Period Plan (the "TPP") and that she could accept the offer by returning the requested documents by February 28, 2017. A copy of the TPP offer is attached as ***Exhibit 4***.

21. On February 22, 2017, Lewber executed a copy of the TPP and sent it through facsimile to BANA. A copy of the executed TPP is attached as ***Exhibit 5***.

22. The TPP contains a signature line for the "Borrower", and Lewber signed using her legal name at that time, "Kelly L. Lewber". *See Exhibit 5*.

23. On February 28, 2017, Lewber spoke with a representative of BANA where the representative confirmed that BANA received the executed TPP on February 22, 2017.

24. Pursuant to the instructions in the TPP, Lewber timely and properly submitted two of the three TPP payments each in the amount of $256.49. A copy of the relevant portions of BANA's Transaction History is attached as ***Exhibit 6***.

25. Despite the fact that Lewber fully complied with the terms of the TPP, BANA sent correspondence dated March 22, 2017 informing Lewber that she was no longer eligible for a loan modification because BANA "didn't receive all required signatures on the loan

modification documents by the specified deadline" (the "Denial Letter"). Lewber received the Denial Letter on or about April 5, 2017. A copy of the Denial Letter is attached as *Exhibit 7*.

26. Pursuant to the instructions in the TPP, Lewber timely and properly made her third TPP payment in the amount of $256.49. *See Exhibit 6*.

27. On April 4, 2017, Lewber spoke to a representative of BANA. The representative advised her that she was required to sign the TPP with her maiden name, "Kelly L. Diedenhofer". In response, Lewber told the representative that she had sent the corrected documents to BANA three times in which she had executed each version of the TPP as Kelly L. Diedenhofer. Lewber also requested that BANA immediately re-send the documentation. The Representative refused.

**(Submissions After the Denial Letter - April 5, 2017 to Present)**

28. On April 5, 2017, after receiving the Denial Letter, Lewber again explained to a representative of BANA that she previously faxed a copy of the TPP with Lewber's signature as Kelly L. Diedenhofer as instructed by BANA on the TPP. The representative told Lewber that she could not appeal this decision and had to start the loss mitigation process all over again.

29. On or about May 4, 2017 Ms. Lewber submitted a new loss mitigation application to BANA. This application was acknowledged as received by BANA on the same day. *See Exhibit 8* - BANA Loss Mitigation Correspondence May 4, 2017 - May 21, 2018 at p. 28.

30. On or about June 16, 2017, Ms. Lewber received two pieces of correspondence from BANA dated June 14, 2017. The first letter informed her of a new customer relationship manager - "Cindy Simental" - being assigned to her file. *Id.* at p. 25 The second letter informed

her that BANA was closing her application for assistance for failure to receive documentation. *Id.* at p. 23-24

31. On or about September 2, 2017 Ms. Lewber received a letter from BANA dated August 31, 2017 thanking her for her participation in the loss mitigation process. *Id.* at p. 21

32. On or about September 30, 2017 Ms. Lewber received a letter from BANA dated September 27, 2017 informing her of a new customer relationship manager - "Nanette Johnson" - and notifying her about options to modify her loan. *Id.* at p. 19-20

33. On or about November 10, 2017 Ms. Lewber received a letter from BANA dated November 7, 2017 notifying her again much like the June 14, 2017 letter that BANA was no longer reviewing her for loss mitigation because BANA didn't receive the requested documents. *Id.* at p. 17-18

34. On the same day Ms. Lewber contacted BANA and was told that her application for loss mitigation had been cancelled because "her home had been sold". As of November 10, 2017 Lewber's home had not yet been sold by the Clermont County Sheriff.

35. On or about December 3, 2017 Ms. Lewber received a letter from BANA dated December 1, 2017 notifying her that a new customer relationship manager - "Fernando Alvarez" - had been assigned to her file and notifying her about options to modify her loan. *Id.* at p. 13-16

36. On or about February 22, 2018 Lewber again sent a complete application for loss mitigation to BANA via fax. Ms. Lewber called BANA on or about February 22, 2018 and confirmed via phone with a BANA representative that this information had been received.

37. Sometime between March 20, 2018 through March 30, 2018 Lewber contacted BANA by phone and was informed that her application for loss mitigation had been closed for

lack of receipt of documentation. Lewber was frustrated since she had not received any correspondence from BANA between February 22, 2018 to this call.

38. On April 7, 2018 based on the documentation and solicitations received by BANA described in Paragraph 35 Ms. Lewber submitted documentation for review for a loan modification.

39. On or about April 8, 2018 - less than 48 hours before the sale - Ms. Lewber received correspondence from BANA dated April 7, 2018 acknowledging receipt of the April 7, 2018 documentation. *Id.* at p. 9-10

40. On April 10, 2018, the Property was sold at a private auction sale to a third party purchaser. *See Exhibit 2*.

41. On or about April 11, 2018 Ms. Lewber received correspondence from BANA dated April 10, 2018 notifying her that BANA was reviewing her application for loan modification submitted on April 7, 2018. *Exhibit 8* at p. 7.

42. On the same date (April 11, 2018), Ms. Lewber received correspondence from BANA dated April 10, 2018 notifying her of a new customer relationship manager - "Vincent Corral" - and again soliciting her for a loan modification despite the private auction sale. *Id.* at p. 6.

43. On or about May 25, 2018 Ms. Lewber received correspondence from BANA dated May 23, 2018 thanking her for her participation in the loss mitigation process. *Id.* at p. 1-5

44. None of the documents sent on or after April 10, 2018 by BANA informed Ms. Lewber of the private auction sale or the fact that BANA had moved forward with the sale

despite the receipt of the TPP, the three payments required under the TPP and at least two (2) subsequent applications for loss mitigation between May 4, 2017 and April 7, 2018.

45. On August 13, 2018, Lewber hired Dann Law to investigate potential claims against BANA.

46. On September 4, 2018, Lewber, through counsel, sent three requests for information (the "RFIs") in order to obtain information related to the Loan and investigate Lewber's claims. A copy of each of the RFIs is attached as ***Exhibit 9***.

47. While BANA substantively responded to two of the RFIs, BANA failed to respond to the third RFI sent pursuant to 12 C.F.R. § 1024.36(d)/15 U.S.C. § 1641(f)(2) requesting that BANA identify the current owner, master servicer, and servicer of the loan. Compare *Exhibit 9* with ***Exhibit 10*** - BANA Response dated October 22, 2019, without supporting attachments.

48. Based on BANA's failure to send a response to the third RFI on or about October 29, 2018 Lewber, through Counsel, was forced to send a Notice of Error (NOE #1) pursuant to 12 C.F.R. § 1024.35(b)(11) requesting that BANA respond to RFI sent pursuant to 12 C.F.R. § 1024.36(d). ***See Exhibit 11.***

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY BANA

49. BANA's actions are part of a pattern and practice of behavior in violation of Lewber's rights and in abdication and contravention of BANA's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

50. At the time of the filing of this Complaint, BANA has had more than Twenty Four Thousand Nine Hundred Seventy (24,970) consumer complaints lodged against it

8

nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

51. Lewber has reviewed the CFPB's consumer complaint database and have identified other alleged RESPA violations by BANA against other borrowers. In particular, the Mackintoshes have reviewed the fifteen (15) consumer complaints attached hereto and identified as *Group Exhibit 12*. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that BANA has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

## COUNT ONE: VIOLATION OF 12 C.F.R § 1024.41(e)

**[Failure to Provide Reasonable Time for Borrower to Comply with Loss Mitigation Requirements After Acceptance of Trial Payment Plan]**

52. Lewber restates and incorporates all of her statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein.

53. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))."

54. 12 C.F.R. § 1024.41(e)(1) provides:

> Subject to paragraphs (e)(2)(ii) and (iii) of this section, if a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower.

55. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

56. 12 C.F.R. § 1024.41(e)(2)(ii) provides:

> A borrower who does not satisfy the servicer's requirements for accepting a trial loan modification plan, but submits the payments that would be owed pursuant to any such plan within the deadline established pursuant to paragraph (e)(1) of this section, shall be provided a reasonable period of time to fulfill any remaining requirements of the servicer for acceptance of the trial loan modification plan beyond the deadline established pursuant to paragraph (e)(1) of this section.

57. BANA received a complete loss mitigation application from Lewber on December 13, 2016. *See Exhibit 3*.

58. There was no foreclosure sale scheduled as December 13, 2016 because the plaintiff in the Foreclosure withdrew the Order of Sale on October 31, 2016 and no subsequent sale was scheduled until January 9, 2017. *See Exhibit 2*.

59. Lewber timely and properly made all payments owed pursuant to the terms of the TPP within BANA's deadlines as established by the TPP. *See Exhibit 6*.

60. On March 22, 2017, although Lewber timely and properly submitted two TPP payments, BANA sent correspondence informing Lewber that she was no longer eligible for a loan modification because BANA "didn't receive all required signatures on the loan modification documents by the specified deadline." *See Exhibit 7*.

61. As alleged above Lewber sent the TPP agreement with her signature as Kelly L. Diedenhofer on at least four (4) occasions.

62. As BANA revoked the TPP offer before Lewber made her third TPP payment, and after she timely and properly made two TPP payments, it failed to allow Lewber a reasonable time to fulfill the TPP's remaining requirements.

63. As BANA revoked the TPP offer despite Lewber sending four (4) separate executed versions of the TPP with Lewber signing as Kelly L. Diedenhofer as instructed by BANA, it failed to allow Lewber a reasonable time to fulfill the TPP's remaining requirements.

64. Based on the allegations above in addition to failing to give Lewber a reasonable time to fulfill the TPP's remaining requirements, BANA also failed when asked since April 2017 to provide Lewber with any permanent modification documents based on Lewber's performance of the TPP once she sent in the completed TPP agreement with her maiden name.

65. BANA's actions in failing to allow Lewber a reasonable period of time to fulfill any remaining requirements, as expressly required by 12 C.F.R. § 1024.41(e)(2)(ii), constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41.

66. BANA's actions are believed to be a part of a pattern and practice of behavior in conscious disregard for Lewber's rights.

67. As a result of BANA's actions in failing to allow Lewber a reasonable period of time to fulfill any remaining requirements, Lewber suffered actual damages, including but not limited to: (1) The loss of her home in which at the time of sale Lewber had at least $15,500.00 in equity based on the fair market value of the property versus the amounts owed to BANA; (2) the costs incurred from Lewber having to relocate from her home to Greenville, OH; (3) the postage costs incurred by her counsel to prepare the RFIs; (4) counsel's time and expense in having to prepare NOE #1 after reviewing Exhibit 10 of at least $307.00; and (5) extreme

emotional distress directly and proximately caused by attempting to obtain a permanent modification and not knowing day to day whether or not her home would eventually be sold at a sheriff's sale which has included hospitalization and on-going therapy.

68. BANA is liable to Lewber for actual damages of at least $40,000.00 as outlined in Paragraph 67 above, statutory damages of $2,000.00 based upon the pattern and practice contained herein and in Exhibit 12, and Counsel's reasonable attorneys' fees and costs.

**COUNT TWO: VIOLATION OF 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1)(E)**

**[Failure to Properly Respond to RFI #3]**

69. Lewber restates and incorporates all of her statements and allegations contained in paragraphs 1 through 51, in their entirety, as if fully rewritten herein.

70. 12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

71. A request for information is not limited to requests related to "servicing". 78 FR 10696, 10761.

72. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

73. 12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

[A] servicer must respond to an information request by either:

       (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

      (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

74. Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:
   (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
   (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

75. 12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

76. Lewber, through counsel, sent RFI #3 to BANA's designated address for receipt of Requests for Information and Notices of Error on September 4, 2018. *See Exhibit 9* at pp. 7-8

77. Through RFI #3 Lewber requested information related to the ownership and servicing of her loan pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2). *Id.*

78. BANA received RFI #3 on September 7, 2018. *See Exhibit 11* at p. 9

13

79. Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), BANA had until Monday, October 22, 2018 to provide a response to RFI #3.

80. Based on Exhibit 10, BANA did not respond to RFI #3 and instead timely responded to RFI #1 and RFI #2.

81. As a result of BANA's failure to timely respond to RFI #3 Lewber, through Counsel, was compelled to send NOE #1 to BANA on October 29, 2018. *See Exhibit 11* at pp. 1-8.

82. BANA's actions, in failing to provide proper written correspondence to Lewber in response to RFI #3 within thirty (30) business days of October 22, 2018, constitutes a willful violation of 12 C.F.R. § 1024.36(d).

83. BANA's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Lewber's rights.

84. As a result of BANA's actions, BANA is liable to Lewber for actual damages related to the creation and sending of NOE #1 of at least $307.00, statutory damages of $2,000.00 based upon the pattern and practice contained herein and in Exhibit 12, and Lewber's reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. §§ 2605(f)(1) and (3).

## COUNT THREE: BREACH OF CONTRACT

85. Lewber restates and incorporates all of her statements and allegations contained in paragraphs 1 through 51, in their entirety, as if fully rewritten herein.

86. The TPP is an enforceable contract between Lewber and BANA. *See Exhibits 4-5*.

87. Lewber fully performed her obligations pursuant to the TPP by making every payment of amounts properly due and by otherwise substantively meeting every obligation imposed by the TPP. *See Exhibit 6*.

88. BANA breached the TPP by failing to honor its terms, specifically by failing to provide Lewber with a permanent modification.

89. BANA owed Lewber an implied duty of good faith to handle the TPP and the payments made by Lewber properly and in accordance with the parties' agreement.

90. Lewber suffered actual damages proximately caused by BANA's actions, including but not limited to: (1) The loss of her home in which at the time of sale Lewber had at least $15,500.00 in equity based on the fair market value of the property versus the amounts owed to BANA; (2) the costs incurred from Lewber having to relocate from her home to Greenville, OH; (3) the postage costs incurred by her counsel to prepare the RFIs; (4) counsel's time and expense in having to prepare NOE #1 after reviewing Exhibit 10 of at least $307.00; and (5) extreme emotional distress directly and proximately caused by attempting to obtain a permanent modification and not knowing day to day whether or not her home would eventually be sold at a sheriff's sale which has included hospitalization and on-going therapy.

91. As a result of BANA's actions herein, BANA is liable to Lewber for actual damages of at least $40,000.00 as detailed herein and in a total amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Kelly Lewber prays that this Court enter its order granting judgment against Defendant Bank of America, N.A., as follows:

A. For actual damages of at least $40,000.00 and in a total amount to be determined at trial related to the allegations contained in Count One and/or alternatively for the allegations contained in Count Three;

B. For actual damages of at least $307.00 and in a total amount to be determined at trial for the allegations contained in Count Two;

C. For statutory damages of up to Two Thousand Dollars ($2,000.00) for each and every violation of RESPA contained in Count One and Count Two;

D. For an award of Lewber's reasonable attorneys' fees and costs as to Count One and/or Count Two; and

E. Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Marc E. Dann
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Kelly Lewber*

## JURY DEMAND

Lewber hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Marc E. Dann
Marc E. Dann (0039425)
Dann Law
*Counsel for Plaintiff Kelly Lewber*